ANNA J. CULLEN AND CHARLES CULLEN, PLAINTIFFS-RESPONDENTS, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY, DEFENDANT-APPELLANT.

Argued November 24, 1913—Decided March 16, 1914.

Where a railroad company, in order to facilitate the wheeling of baggage trucks across its tracks, has constructed a saucer-like depression about midway of its passenger platform, immediately opposite its ticket office and at the point where it regularly brings the steps of its passenger trains to a stop in order that its passengers may get on or off, and the evidence indicates that such construction appears, to one alighting from a train, level like any other part of the level platform, the question of whether or not it constituted a violation of the railroad's duty to provide a reasonably safe place for its passengers to alight, was properly left to the jury in a case where a passenger suffered a sprained ankle as a result of stepping upon the inclined or slanting side of the depression while alighting from a train upon what she thought was a level part of the platform.

On error to the Supreme Court, Atlantic Circuit.

For the defendant-appellant, *Bourgeois & Coulomb.*

For the plaintiffs-respondents, *Wescott & Wescott.*

The opinion of the court was delivered by

WHITE, J. The plaintiffs, who are a wife and her husband, sued because of a sprained ankle suffered by the wife in alighting, in the daytime, from defendant's train (upon which she was a passenger for hire) upon its passenger platform at Minotola station in Atlantic county. This platform had in it, near the middle of its length and immediately opposite the ticket office, and at the point where the company regularly brought the steps of its passenger trains to a stop in order that its passengers might get on or off, a saucer-like depression of a depth below the level surface of the platform of about five and a half to seven and a half inches at the lowest point next to the track and running across and in each direction along the platform a distance of three or four feet with an upward slant or grade until it ran out to nothing at the platform level. This construction resulted in a downward slant or incline in the apparently level portions of the platform as it ran into the depression from each direction. The accident resulted from a passenger stepping upon this slant or incline in alighting from the train when she thought she was stepping upon a level platform. The purpose of the depression was to facilitate the wheeling of baggage trucks across the tracks to the opposite platform.

The declaration averred a duty of defendant to furnish a reasonably safe and fit place or platform for its passengers to alight upon from its trains, and a violation of that duty. At the trial, after the testimony was all in, some question seems to have arisen as to whether defendant's negligence did not consist in stopping its train at a dangerous point with the car steps opposite this depression, instead of at a safe place where the platform was level; and, upon request and over objection and exception, the trial judge permitted

an amendment by the addition of a count covering this theory. It is now complained that this amendment introduced a new and different cause of action, and, consequently, should not have been allowed. We think, however, that the original averment stated the true cause of action. Obviously, under the circumstances here present, this portion of the platform was intended for passengers to alight upon. It was substantially at the central point and right at the ticket office, clearly the place where, more than any other, passengers would naturally take and leave the trains. The real question involved was whether or not defendant had fulfilled its duty to provide a reasonably safe place at this point for its passengers to alight upon, and the amendment was therefore quite unnecessary and immaterial.

The only other contention before us is that the learned trial judge erred in refusing to nonsuit or to direct a verdict in defendant's favor. We think he did not. Under the peculiar circumstances of this case, as above recited, there was clearly a jury question.

It is urged that this view conflicts with the decision of this court in *Feil* v. *West Jersey and Seashore Railroad Co.*, 48 *Vroom* 502, but this is not so. In that case the passenger was injured, not in alighting from a train, but while walking along the platform in order to take the train, and the accident resulted from her unexpectedly stepping down a step of some eight or ten inches which led from the platform level to a truckway extending across the platform, and which was perfectly obvious if she had looked where she was stepping. This court there said: "The duty which a railroad company owes to its passengers, with relation to its station platforms, is to take care that the method of construction adopted by it will render the platform as safe for the use of its passengers as the exigencies of its business will permit. The degree of care which it is required to take is that which is exhibited by persons of ordinary prudence under like circumstances, and, so, the adoption of a method of platform construction which accords with that in general use by well regulated railroad companies, and which is approved by experience, is a due

performance of the duty which it owes to its passengers in that regard." This element of "general use by well regulated railroad companies" is entirely lacking in the present case, but quite apart from that, a step in a station platform so constructed as to be perfectly obvious to anyone walking along the platform in broad daylight, as in the Feil case, is a very different proposition from such a construction as would appear level to one stepping from a train, when in fact it was inclined or slanting, as in this case. Defendant claims, however, that the two ends of the depression each present at most only an incline similar to that in common use at the end of a station platform where it runs down to the ground level in order to facilitate trucking to and from it, and, therefore, when resolved into its component parts, is a construction in general use. The difficulty with this contention is that such an incline at the end of a platform is where it is naturally expected to be and where its existence would, because of the ground at one end and the platform at the other, be quite obvious to any one; whereas, occurring midway of the platform and in connection with a reverse incline leading back to the platform level, it was where no one would expect it to be and had the appearance to any one alighting from the train, of being level just like any other portion of the level platform.

We think the case was one for the jury under the evidence submitted, and that the motions for nonsuit and for a direction were properly refused.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, SWAYZE, PARKER, BERGEN, KALISCH, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.   9.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, MINTURN, BOGERT, JJ.   4.